CANNELLA, Judge.
Appellant, Tommy John Evans, appeals from a judgment dismissing his suit for personal injuries sustained in a fall at a rental hall, Jefferson Orleans South, owned and managed by appellees, Jefferson Orleans South, Inc. and T.J. Lee, and insured by appellee, Continental Casualty Company. We affirm.
On the evening of May 19, 1987, appellant went to the Jefferson Orleans South, to watch his father play in a darts tournament. The hall, crowded with 350 to 450 people, was selling beer and liquor. During the evening, trophies and awards were presented from a platform or stage (two feet high), located at one end of the building. A microphone was set up on the platform and the president of the Southern Darts Association, Sam Furlow, made the presentations.
At past tournaments, when the awards were presented, the captain of the winning team was permitted to introduce his team members. However, prior to this tournament, a split had developed in the association and a new association was being formed by Furlow. That evening, tension mounted between the factions, and, as a result, Furlow refused to allow the winning captains access to the microphone and introduction of their team members.
At approximately 10:30 p.m., Furlow announced that appellant’s father’s team was the winner of its division. Sid Lapayere, the team captain, forcibly attempted to take the microphone from Furlow. Both appellee, T.J. Lee, and his brother, Wayne, who also managed and owned the hall, were on the stage. As a result of the actions of Lapayere, a fight broke out involving numerous people, both on and off the stage. When it was over, appellant was discovered on the floor in extreme pain. He had suffered a broken ankle and *410 torn ligament, which subsequently required surgery to repair.
As a result of his injuries, appellant filed suit against Furlow, Southern Dart Association and Anheuser-Busch, Inc., the beer supplier. In his petition, appellant claimed that he fractured his ankle when he slipped and fell as a result of beer on the floor. He also asserted that the fight, started by Furlow, was a further cause of his injury. In a supplemental petition, appellant added defendants, T.J. Lee, Jefferson Orleans South, Inc. and their insurer, Continental Casualty Company, asserting T.J. Lee’s negligence and/or intentional acts.
Anheuser-Busch was dismissed by Summary Judgment on May 25, 1989. Furlow and Southern Dart Association did not participate in the trial on May 21, 1991.[1] The trial judge rendered judgment in favor of appellees and dismissed appellant’s case, with prejudice and at his cost. He found that appellant did not bear his burden of proof concerning his version of the incident and injured his ankle as a result of a fall from the stage after he voluntarily involved himself in the fight.
On appeal, appellant asserts that the trial judge erred in his findings of fact and that this court should address the issues de novo. Second, he asserts that he established, by a preponderance of the evidence, that appellees were negligent. Third, he requests an award of damages in an amount sufficient to compensate him for his injury.
Appellant refers to two findings of fact in the reasons for judgment of the trial judge which erroneously restate the testimony. He contends that the testimony of appellant’s father, Raymond Evans, is imputed to lack credibility because he grossly misstated the size of appellee, T.J. Lee. The trial judge stated:
“He further testified that T.J. Lee jumped on the back of the captain on the stage and that the said T.J. Lee was about 5'10" and weighed approximately 205 pounds (later in the trial T.J. Lee testified as to his height of 5'5" and weight of 117 pounds).”
Actually, Mr. Evans was referring to the size of Lapayere and not to T.J. Lee. The record reflects that this assertion by appellant is correct. Appellant contends that this mistake affected the credibility choices made by the trial judge.
The second factual error relates to a statement by the trial judge that Brian Murray, appellee’s witness, saw appellant fall from the stage. Actually, Brian Murray was unable to state that he saw appellant fall from the stage. He saw a group of people fall from the stage and saw appellant, for the first time, when he was lying on the ground after the incident.
In Rosell v. Esco, 549 So.2d 840 (La.1989), the Louisiana Supreme Court restated the manifest error rule which limits the appellate court from disturbing factual findings of the trial court in the absence of manifest error. In that opinion, in footnote 2 at page 844, the court noted:
“Nevertheless, when the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits.” (citations omitted).
Otherwise, when the findings are based on the credibility of witnesses, the clearly wrong standard demands great deference to the findings of the trier of fact. Rosell v. Esco, supra. Further, where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Id. Only “where the documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, ...” may the reviewing court possibly find manifest error despite a finding purportedly based on a credibility determination. Id.
After our review of the evidence, we find that the trial judge erred in the two factual *411 findings related above. However, we also find that the errors were not materially significant such as to compromise appel-lee’s version of the events which occurred the night of the injury. Thus, we find we must address the issues under the manifest error standard and not de novo as urged by appellant.
Appellant asserts that when the fight began on the stage, he was standing on the “tile”[2] floor, near the stage, behind his parents, watching the award presentation. He stated that puddles of beer were on the floor and that, when he tried to reach his mother to remove her from harm’s way, he slipped on the wet floor surface. He stated that the crowd was pushing and moving in different directions and that his foot caught on a metal strip separating the tile portion of the floor from the carpeted section. His foot twisted and he fell causing immediate pain to his ankle.
Appellant asserts that he arrived between 9:00 and 9:30 p.m., and was there for approximately thirty minutes before the incident. After his injury, it was thirty to forty minutes before he was taken to the emergency room. The hospital emergency report showed that it received the call around midnight. Appellant vigorously denied being involved in the fracas on the stage. He noted that other fights broke out in various places as well as on the stage, but denied being involved in any of those altercations.
Appellant’s mother, Barbara Evans, his father, Raymond Evans, Dedo Hardin, Jr. and Stan Hebert all supported appellant’s version of the incident, namely, that appellant was not on the stage or in the group that fell from the stage. They all saw him on the floor in pain. Hebert alone saw appellant collapse on the floor, approximately ten feet from the stage front.
Dr. Melvin Parnell, Jr., an orthopedic surgeon, testified that appellant suffered a fractured bone and torn ligaments of the inner portion of the left ankle. The injury required surgery to repair the deltoid ligament and the bone fracture was manually pressed into the proper healing position at the same time. Appellant underwent general anesthesia for the procedure and incurred a six inch incision scar. Dr. Parnell began treating appellant from May 22, 1987 through May of 1988. He gave appellant a 20% anatomic disability impairment with a 60-75% chance of requiring further surgery due to his age and activities. He stated that a fusion may be required because the ankle may “wear out”. Dr. Parnell stated that stress on the ankle will cause swelling and discomfort and arthritic changes will worsen over time. The doctor treated appellant with immobilization, stretching exercises, restriction of activities and medication. He described the injury as an eversion type injury, meaning the ankle turned outward.
Appellee, T.J. Lee, testified that he is one of the owners of Jefferson Orleans South and that he and his brother Wayne manage the hall. He stated that his family owned and operated the facility for nineteen years. When the fight started, he happened to be on stage, for no particular reason. It began when someone threw his brother toward the back of the stage. He stated that he tried to help, but was grabbed and ultimately beaten. The fight escalated as several people became involved. Eventually, the fighting group fell off the platform, onto the steps, and then onto the carpeted area of the floor, on the right side of the stage near the beer bar. He testified that appellant was among the combatants. He stated that the stage steps, were damaged and there was no beer on the floor. The waiters and bartenders were routinely instructed to clean up spills as they occurred. He was unable to state that he specifically observed anyone cleaning that evening.
Wayne Lee testified that he and his brother were requested to stand on the stage because Furlow expected “incidents” due to the split in the association. He stated that Lapayere attempted to take the microphone from Furlow and he was pushed into the back wall. He confirmed that several people jumped into the fray. He could not state that appellant was among the fighters. He only noticed appellant on the floor following the incident. *412 However, he stated that he assumed he was on the stage because he appeared to have been in the group that fell from the stage.
Brian Murray stated that he helped pull people off T.J. Lee and removed him to the kitchen area behind the stage. The first time he observed appellant was on the floor, injured. He asserted that the staff continually cleaned up any wet areas on the floor. He was not able to recollect specific instances of cleaning on that evening.
The trial judge found that the injury of appellant was not caused by a slip and fall on a foreign substance on the floor, but by his voluntary involvement in the fight that started when Purlow refused to surrender the microphone to Lapayere. He reached this finding after weighing the credibility of the witnesses, who presented conflicting versions of the incident. After our review, we find both versions to be a permissible view of the evidence. Under Rosell, we cannot find manifest error under these circumstances and thus should not disturb the findings of the trial court.
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of this appeal are to be paid by appellant.
AFFIRMED.

. It is noted that according to the brief of appellant, Furlow and Southern Dart Association were never served. Therefore, issue was not joined, trial was not held and judgment was not rendered concerning them. Also, on October 15, 1990 appellant filed a Motion to Dismiss and the order is unsigned.

. The floor is actually made of wood parquet.